**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Nathaniel Lee BELL, Defendant and Appellant.**

**No. 20451.**

Supreme Court of Utah.

April 26, 1988.

David L. Wilkinson, Stephen Mikita, Salt Lake City, for plaintiff and respondent.

Jo Carol Nesset–Sale, Salt Lake City, for defendant and appellant.

STEWART, Associate Chief Justice:

The defendant was convicted in a bench trial of five counts of aggravated sexual assault and five counts of aggravated burglary. Four of the aggravated sexual assaults were committed after Utah's minimum mandatory sentencing scheme for aggravated sexual assault and other crimes went into effect. *See* Utah Code Ann. § 76–5–405(1) (Supp.1983) (amended 1984, 1986 & 1987). The trial court sentenced the defendant to indeterminate terms of five years to life for the first sexual assault charge and the five counts of aggravated burglary and ten years to life for each of the remaining aggravated sexual assaults, with the minimum term being mandatory. All sentences are to run concurrently.

The minimum mandatory sentencing statute provides for imposition of mandatory five-year, ten-year, or fifteen-year terms. The trial court held a sentencing hearing to determine which of the minimum mandatory terms should be imposed for the four aggravated sexual assault convictions. The prosecutor offered no evidence of aggravation and did not argue for a minimum mandatory fifteen-year term. The prosecution did, however, argue that because of the repeated and violent nature of the acts, the defendant should be sentenced to the presumptive ten-year minimum mandatory term rather than the five-year term.

The defense introduced testimony from a psychologist, Dr. Lester J. Nielsen, Jr., who testified that the defendant suffered from a post-traumatic stress disorder caused by his military experiences in Vietnam, where he served as a medic and encountered many severely wounded persons and dead bodies. Dr. Nielsen stated that the defendant's disorder had a direct bearing on his sexual attitudes and experiences and his criminal behavior. Dr. Nielsen expressed the opinion that the defendant's disorder is treatable and noted that the sooner the treatment begins, "the much more positive the outcome." Also at the sentencing hearing, the defendant stated that he was sincerely sorry for what he had done and that he thought he was amenable to treatment. Defense counsel urged the court to impose the five-year minimum mandatory term rather than the ten-year term, so that the defendant could be accepted into the Utah state prison's sexual offender program at a much earlier date. Because only those prisoners having a relatively short time remaining before parole are permitted to participate in the sexual offender program, the defendant would have to wait at least an additional five years to get into the treatment program. Defense counsel also informed the court that the case detective had indicated that he had no objections to a five-year minimum sentence.

The trial court ruled that the violent nature of the crimes, the number of crimes, and the indications of prior criminal conduct constituted aggravating circumstances. The court also ruled that those circumstances were mitigated by Dr. Nielsen's testimony, the defendant's sincere sorrow, and the psychological trauma that the defendant suffered as a result of his military service in Vietnam. On that basis, the court imposed a minimum mandatory prison term of ten years for the four counts of aggravated sexual assault.

On appeal, the defendant challenges the constitutionality of the minimum mandato-

ry terms for the four aggravated sexual assault convictions. He asserts that the minimum mandatory sentencing scheme for aggravated sexual assault constitutes cruel and unusual punishment because the penalty is disproportionate to the crime and because he will be denied treatment in the sex offender program for an unreasonable period of time. In addition, he argues that the statute authorizing five-year, ten-year, or fifteen-year minimum mandatory terms is unconstitutionally vague because it gives no guidance to the sentencing judge and allows arbitrary and capricious sentencing. Finally, the defendant contends that the minimum mandatory sentencing scheme is an unconstitutional infringement on the inherent power of the judiciary to suspend sentences and that the minimum mandatory sentencing scheme unconstitutionally invades the protected province of the Board of Pardons. No attack is made on his convictions as such.

## I.

■ We turn first to the defendant's assertion that the four concurrent ten-year minimum mandatory sentences imposed by the trial judge are unconstitutionally disproportionate to the severity of the crimes. He does not attack the maximum term imposed, i.e., life imprisonment. To support his argument that the mandatory minimum term is unconstitutional, he relies on *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). To support his argument that the minimum mandatory sentence is unconstitutional because it denies him required medical treatment, he relies on *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

The arguments that sentences imposed are unconstitutionally disproportionate and that the minimum mandatory sentence unconstitutionally denies him medical treatment, and the argument as to the inherent power of the judiciary were addressed and rejected in *State v. Bishop*, 717 P.2d 261 (Utah 1986). The only important difference between *Bishop* and this case is that here, the minimum mandatory sentencing scheme of five, ten, and fifteen years applies to aggravated sexual assault rather than to sodomy on children. That is not a difference of consequence under the three-part *Solem* test applied in *Bishop* for determining constitutional proportionality of a sentence.

Rape is one of the most heinous crimes in the criminal law and has traditionally been dealt with as such. It is a crime of violence. The crime of aggravated sexual assault is a crime of even greater severity because, in addition to proof of rape, it requires proof of serious bodily injury to the victim; the threat of death, serious bodily injury, or kidnapping; the use of a deadly or dangerous weapon; or the aid or assistance of one or more persons. The imposition of a severe penalty for such a crime, even one of the most severe penalties under Utah law, is not constitutionally disproportionate under *Solem* and *Bishop*.

## II.

■ The defendant also contends that the minimum mandatory sentencing scheme is unconstitutionally vague because the statutory procedures for determining which minimum mandatory sentence should be imposed do not specify who has the burden of proof with respect to aggravating and mitigating circumstances; what aggravating circumstances justify a fifteen-year sentence; whether the proof of some mitigating circumstances by the defendant shifts the burden to the State to refute the claim, as in affirmative defenses; and whether aggravating circumstances are to be balanced against mitigating circumstances, as under the death penalty statute. Furthermore, the defendant contends that the sentencing guidelines promulgated by the Utah Judicial Council to provide guidance to trial judges in imposing mandatory sentences are "inappropriate to a mandatory sentencing scheme" because they include factors which apply to sentences other than minimum mandatory sentences. Finally, the defendant contends that the sentencing scheme as applied to him in this case produced an arbitrary result.

In *State v. Egbert*, 748 P.2d 558 (Utah 1987), we held: "Any vagueness to be

found in subsection 76–5–405(2), which provides for sentences of five, ten, or fifteen years and which may be for life, is dispelled by the implementing language of Utah Code Ann. § 76–3–201(5) (Supp.1983) (amended 1984, 1986 & 1987), which plainly mandates imposition of the sentence of middle severity unless there are circumstances in aggravation or mitigation of the crime." *Id.* at 559. The Court also stated that imposition of the terms of higher and lower severity was dependent on the existence of aggravating or mitigating circumstances. *Id.* To the extent that the vagueness claims urged in the case at issue are the same as those urged in *Egbert,* that case is dispositive. However, the arguments based on vagueness in this case also extend beyond issues decided there. The additional claims relate primarily to procedural issues based on the procedures to be employed in a sentencing hearing.

The sentencing phase of a criminal trial is a critical stage of a criminal proceeding, and a defendant is entitled to procedural protections to prevent any unfairness. *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *State v. Casarez,* 656 P.2d 1005, 1007 (Utah 1982); *State v. Lipsky,* 608 P.2d 1241 (Utah 1980). Utah has long had a general statutory provision authorizing a sentencing hearing at which the State and a defendant may adduce aggravating and mitigating circumstances pertinent to the imposition of a fair sentence, *see* Utah Code Ann. § 77–35–22 (1982). However, after enacting minimum mandatory sentences—which departed from the general indeterminate sentencing scheme that the State has long employed in almost all felony cases—the Legislature provided specific statutory guidelines for sentencing in cases in which a minimum mandatory sentence must be imposed. Utah Code Ann. § 76–3–201(5)(c) (Supp. 1983) (amended 1984, 1986 & 1987) provides that a trial judge, in fixing a minimum mandatory term, shall take into account the following factors:

In determining whether there are circumstances that justify imposition of the highest or lowest term, the court may consider the record in the case, the probation officer's report, other reports, including the reports received pursuant to § 76–3–404, statements in aggravation or mitigation submitted by the prosecution or the defendant, and any further evidence introduced at the sentencing hearing.

In imposing sentence, the trial judge is required by § 76–3–201, subsections 5(d), 5(e), and 6(b), to adhere to the following requirements:

(d) The court shall set forth on the record the facts supporting and the reasons for imposing the upper or lower term.

(e) The court in determining a just sentence shall be guided by sentencing rules regarding aggravation and mitigation promulgated by the Judicial Council.

(6) . . . .

(b) The court shall state the reason for the sentence choice on the record at the time of sentencing. The court shall also inform the defendant as part of the sentence that if the defendant is released from prison, he may be on parole for a period of ten years.

These provisions are designed to direct sentencing discretion so that a fair and just sentence may be rendered within the limits set by statute. Of course, the appropriateness of a particular sentence can never be determined by precise measurement. Nevertheless, we do not believe that formal rules of procedure prescribing who has the burden of proof as to mitigating and as to aggravating circumstances, when the burden of proof shifts to the opposing party, and what standard of persuasion must be met to establish a lesser or a greater minimum sentence would enhance the fairness of sentencing hearings. The statute contemplates a comparatively informal procedure. Evidence of aggravation or mitigation may come from the trial on the merits of the charge. In addition, evidence of both aggravating and mitigating circumstances may be submitted to the trial court after conviction. Obviously, the defendant may adduce evidence of mitigation and the prosecution may produce evidence of aggravation insofar as the evidence relates to

the defendant's sexual propensities, the likelihood of rehabilitation, and the effect that a particular sentence may have on those who will be affected by it. Ultimately, the trial judge must seek to "[p]rescribe penalties which are proportional to the seriousness of offenses and which permit recognition of differences in rehabilitation possibilities among individual offenders." Utah Code Ann. § 76-1-104(3) (1978).

That procedure is not subject to the same kind of mental processes employed in the determination of factual disputes related to guilt. *State v. Wood*, 648 P.2d 71 (Utah), *cert. denied*, 459 U.S. 988, 103 S.Ct. 341, 74 L.Ed.2d 383 (1982). · It is in that setting that the procedural rules, which the defendant would have us adopt, are particularly useful if, indeed, not indispensable. We recognize that in· *Wood* we required that a death penalty may be imposed only if the sentencing authority in a sentencing hearing finds that aggravating circumstances outweigh the mitigating circumstances beyond a reasonable doubt and that the death penalty is appropriate beyond a reasonable doubt, considering all the circumstances. Thus, *Wood* lends some support to the defendant's argument. 648 P.2d at 83.

But in a capital case there are only two alternatives, and the choice of death, being unique, justifies requiring the most persuasive reasons and a high degree of subjective certainty. However, those reasons do not have great force in choosing one of three possible sentences, none of which has the finality of death. Furthermore, none of the penalties is categorically different from the other two in either character or extent. Nor are there clear considerations of fairness that militate in favor of a particular standard, except to the extent that one may quarrel with the wisdom of the statute—which is beyond our prerogative. We also noted in *Wood* that constitutional considerations undergirded our decision there; that is not the case here.

With the requirements that the trial judge set forth on the record those facts and reasons which are mitigating or aggravating in nature and the reasons for his choice of the particular sentence imposed, the statute provides an adequate basis both for guiding the trial court's discretion and for this Court to review the trial court's exercise of that discretion.

In the instant case, the trial court stated the aggravating and mitigating circumstances he found and the reasons for imposing the term he did:

I have heard from the parties, received letters and reports and heard statements identifying circumstances in aggravation or mitigation. And if they had any dispute with the probation officer's report, they had a right to do it.

I have a complete probation report. I have read it in detail. I have had a letter from the defendant, I have had Dr. Attia's letter and I have Dr. Neilson's [sic] written report, plus having heard his written testimony and statements today.

I am not required by law to give facts, except if I impose the upper term or if I impose the lower term. However, the Court will say I have reviewed the sentencing rules regarding aggravation and mitigation, promulgated by the Utah Judicial Council, which are exactly the same mitigation and aggravation guidelines and rules that the Court has had for some period of time. And I have reviewed and looked to those matters. The defendant ... will be on parole for a period of ten years regardless of sentence.

There is a mandatory ten-year parole. I heard the trial in this case. There are multiple aggravated sexual assaults and in connection with that matter, they were done with force and violence in that a knife was used and threats.

There are circumstances, I well heard the doctor and I have viewed the defendant's demeanor and what appears to be his sincere sorrow for what he has done. He does have a previous criminal record; that is, conflict with the law. He did serve in Vietnam. And taking all things into consideration, the court will impose the middle term.

It's the judgment of the court on Count 2, aggravated sexual assault on or

about August 11, 1984, the defendant is sentenced to the indeterminate term provided by law, of not less than ten and which may be for life.

The court then sentenced the defendant on the other counts.

■ In this case, the trial judge applied the standards established by the Legislature in § 76-3-201. Although § 76-3-201(5)(d) requires that the trial court specify "the facts supporting and reasons for imposing the upper and lower term," § 76-3-201(6)(b) requires that the court need only state the reasons for any sentence choice, including the middle term sentence, if there are no circumstances in aggravation or mitigation of the crime. However, when there are aggravating and mitigating circumstances, as there were in this case, the trial court must identify them and give them appropriate weight in pronouncing sentence, even if the sentence is the middle term. The mitigating and aggravating circumstances and the trial court's reasons supporting the sentence should appear on the record. The trial judge in this case complied with those requirements. Therefore, we reject the defendant's claim that the sentencing procedure in this case was arbitrary and the claim that sentence imposed in this case was arbitrary.

Finally, we acknowledge that some of the factors listed in the Judicial Council's guidelines referred to by the trial judge did not bear upon this type of case, as the defendant contends. Nevertheless, those guidelines were, as a whole, useful and relevant.

Affirmed.

HALL, C.J., and HOWE, J., concur.

ZIMMERMAN, Justice (concurring and dissenting):

I join the majority opinion and write separately only to note that I still adhere to the views set forth in my dissenting opinion in *State v. Egbert*, 748 P.2d 558 (Utah 1987), to the effect that the minimum mandatory sentencing scheme adopted by the legislature for many sex crimes is incom-

plete because the Judicial Council has yet to promulgate guidelines tailored to address the choices judges must make under these sentencing statutes. Although I do not agree with the position of the majority in *Egbert*, which is followed by the majority in the present case, I will not continue to note my dissent on this point in future cases.

DURHAM, J., concurs in the concurring and dissenting opinion of ZIMMERMAN, J.